IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| GLEN K. ALLEN, | * | |
| 502 Edgevale Road, | | |
| Baltimore, Maryland 21210, | * | |
| | | |
| Plaintiff, | * | |
| | | |
| v. | * | Civil Action No. _____ |
| | | |
| JOHN de NUGENT, | * | |
| a/k/a JOHN NUGENT, | | |
| Chez Christian Crye | * | |
| 5, rue Marius Renaud | | |
| 13100 Aix-en-Provence | * | |
| France | | |
| | | |
| and | * | |
| | | |
| BRIGITTE de NUGENT, | * | |
| a/k/a BRIGITTE NUGENT, | | |
| Chez Christian Crye | | * |
| 5, rue Marius Renaud | | |
| 13100 Aix-en-Provence | * | |
| France | | |
| | | |
| Defendants. | * | |
| | * | |

## COMPLAINT

Plaintiff Glen K. Allen sues defendants John and Brigitte de Nugent for breach of contract, restitution, and conversion. In support of his complaint, Allen states:

## PARTIES

1. Plaintiff Glen K. Allen is a resident of Maryland.

2. Defendant John de Nugent, also known as John Nugent, lived in Rhode Island prior to his departure with Brigitte de Nugent to France in May 2004. He is an American citizen and is, or was, a resident of Rhode Island or Massachusetts.

3. Defendant Brigitte Harle de Nugent, also known as Brigitte Harle Nugent, lived with John de Nugent in Rhode Island prior to their departure to France in May 2004. She is a French citizen and perhaps also an American citizen because of her marriage to John de Nugent.

## SUBJECT MATTER JURISDICTION

4. The Court has diversity jurisdiction under 28 U.S.C. § 1332. The plaintiff and defendants are residents of different states (or countries) and the amount in controversy exceeds $75,000.

## PERSONAL JURISDICTION

5. This Court has personal jurisdiction over the defendants. The Promissory Note that the de Nugents breached, as described herein, was formed in Maryland and is governed by Maryland law. Moreover, in the Promissory Note the de Nugents expressly consented to the jurisdiction of Maryland courts with regard to any litigation relating, as this litigation does, to the Promissory Note.

## FACTUAL BACKGROUND

6. A few months prior to April 2004, John de Nugent contacted Glen Allen at Allen's home in Maryland. John and Brigitte de Nugent were living in Rhode Island at the time. Allen and John de Nugent had been friends for many years.

7.   John de Nugent described to Allen a plan whereby John and Brigitte de Nugent would purchase the business of a hotel in the French Alps known as the Hotel L'Ourson. John de Nugent followed up on that initial contact with numerous e-mails, telephone calls, and materials regarding the Hotel L'Ourson project. In April 2004, John and Brigitte de Nugent made a visit to Allen's home in Maryland to describe the Hotel L'Ourson project.

8.   In the course of their initial and subsequent contacts, John and Brigitte de Nugent represented that: Brigitte de Nugent had vocational experience that would enable her to successfully operate the Hotel L'Ourson; Brigitte de Nugent's son, who lived in France, would help operate the hotel; Brigitte de Nugent had been in contact with the owner of the hotel, who expressed a strong interest in selling the Hotel L'Ourson business to the de Nugents; and the deal could be consummated by June or July 2004 if Allen would lend them money. The de Nugents promised faithfully to repay all monies lent them and to abide by all the terms of any loan agreement or promissory note.

9.   Allen explained that his wife had recently been stricken with a grave disease, that he had three children to educate, and that he was accordingly reluctant to make the loan that the de Nugents requested. The de Nugents persisted in entreating Allen to make the loan.

10.   Finally, in April 2004, Allen, relying on the de Nugents' representations and good faith, agreed to lend the de Nugents $126,000. Raising the loan funds required a substantial expenditure of Allen's time and money, as he needed to obtain a line of credit on his house, liquidate certain bonds he owned, and shift various of his assets.

11. As a condition to making the loan, Allen required the de Nugents to execute a promissory note. On April 22, 2004, in Baltimore, Maryland, the de Nugents executed the Promissory Note attached to this Complaint as Exhibit 1.

12. The Promissory Note, among other obligations, required the de Nugents to obtain life insurance, with Allen as beneficiary. The de Nugents promised to obtain life insurance promptly once they arrived in France.

13. In May 2004, the de Nugents left for France with Allen's money.

14. In the ensuing six months following their departure to France, the de Nugents — primarily John de Nugent — sent Allen various e-mails and letters describing, or purporting to describe, their attempts to consummate the Hotel L'Ourson deal. The essence of these communications was that unexpected difficulties had arisen - from the French banks, the seller, the business broker, or other sources – but the problems were being solved and Allen should feel confident that the deal would soon be completed.

15. In September 2004, Allen specifically inquired of John de Nugent as to where (i.e., in what account) the loan proceeds were kept, who had access to the loan monies, and how much had been spent. John de Nugent assured Allen that the loan proceeds were kept in a safe, separate account and had not been touched.

16. In a letter dated October 29, 2004, which Allen received on or about November 4, 2004, John de Nugent, after months of describing the Hotel L'Ourson project as very near to consummation, abruptly switched course and told Allen that the seller was corrupt and unreasonable and that the de Nugents were abandoning the project. He further stated that he

~BALT1:4142599.v1 |12/15/04
5629/1-6

would not be returning Allen's money, but rather was looking into a Starbucks or some other restaurant in Aix-en-Provence where he would "invest" the money.

17. Allen immediately, on November 6, 2004, sent an e-mail demanding that the de Nugents return his money and rejecting any plan to use the money for any other purpose. He also requested an accounting of the de Nugents' use of the loan proceeds.

18. John de Nugent, by an e-mail dated November 9, 2004, acknowledged receipt of Allen's November 6, 2004 e-mail, but told Allen he intended to invest the money as he chose despite Allen's instruction that the money be returned. Since that date, the de Nugents, over Allen's objection, have spent some or all of the loan proceeds on a restaurant project in Aix-en-Provence, France. They have also refused Allen's request to account for their use of the loan proceeds. They have also never obtained life insurance despite their contractual obligation to do so.

## COUNT I

### Breach of Contract

19. Allen incorporates the allegations in Paragraphs 1 through 18 as though fully set forth herein.

20. The Promissory Note constitutes a valid and binding contract between Allen and the de Nugents.

21. The Promissory Note requires the de Nugents to obtain life insurance with Allen as beneficiary. Despite multiple requests, the de Nugents have failed and refused to obtain this life insurance.

22. The Promissory Note requires the de Nugents to provide an accounting every three months of their use of the loan proceeds. Despite multiple requests, the de Nugents have failed and refused to provide an accounting.

23. Under the Promissory Note, the loan proceeds were to be used only for the Hotel L'Ourson project. The de Nugents, over Allen's express objection, have nonetheless used the loan proceeds for a restaurant project in Aix-en-Provence.

24. All of the foregoing constitute material breaches of the Promissory Note, entitling Allen to the return of all monies due under the Note. As of the date of this complaint, the de Nugents have made several monthly payments (some late) on the loan amount they owe to Allen, but $115,765 remains due.

WHEREFORE, Allen demands judgment in the amount of $115,765, plus costs and such other relief as the Court deems appropriate.

## COUNT II

### Unjust Enrichment/Restitution
### (In the Alternative to Count I)

25. Allen incorporates the allegations in Paragraphs 1 through 18 as though fully set forth herein.

26. Once they abandoned the Hotel L'Ourson project, the de Nugents had no authority, contractual or otherwise, to use the loan proceeds from the Promissory Note for any purpose. The money should have been promptly returned to Allen, as he requested.

27. The de Nugents' retention and use of Allen's money unjustly enriches them at Allen's expense.

WHEREFORE, Allen demands restitution in the amount of $115,765, plus costs and such other relief as the Court deems appropriate.

## COUNT III

### Conversion

28. Allen incorporates the allegations in Paragraphs 1 through 18 as though fully set forth herein.

29. Once they abandoned the Hotel L'Ourson project, the de Nugents had no authority, contractual or otherwise, to use the loan proceeds from the Promissory Note for any purpose.

30. The de Nugents nonetheless improperly made use of the loan proceeds, exercising dominion over Allen's money in violation of Allen's rights.

31. The de Nugents' actions constitute theft and conversion.

32. As a result of the de Nugents' conversion, Allen has lost $115,687.

33. The de Nugents' actions were willful, knowing, and malicious, entitling Allen to punitive damages.

WHEREFORE, Allen demands judgment in the amount of $115,765 in compensatory damages, plus $20,000 in punitive damages, plus costs and such other relief as the Court deems appropriate.

Respectfully submitted,

Glen K. Allen (Federal Bar No. 06150)

PIPER RUDNICK LLP
6225 Smith Avenue
Baltimore, Maryland  21209-3600
(410) 580-3000